Melba ABBERTON, Appellant,

v.

Richard J. STEPHENS, et al., Respondents.

No. 53097.

Missouri Court of Appeals, Eastern District, Division One.

March 22, 1988.

James Michael Hardcastle, St. Louis, for appellant.

Donald S. Singer, Clayton, Charles E. Bridges, St. Charles, for respondents.

GARY M. GAERTNER, Presiding Judge.

Appellant, Melba Abberton (Abberton), appeals from the judgment entered by the Circuit Court of St. Charles County in favor of Richard J. Stephens in an action instituted by Abberton seeking a declaration of title to real estate. The trial court determined that a general warranty deed executed by Abberton to Stephens was a deed absolute. On appeal, Abberton alleges that the general warranty deed was an equitable mortgage. Finding Abberton's contention to be without merit, we affirm.

The evidence reveals that Melba Abberton and her husband Charles Abberton, now deceased, purchased property in St. Charles County in 1954, and built a house on the property in 1956. In 1966 the Abbertons began to experience difficulties making payments under a note and deed of trust to Community Federal Savings and Loan (Community Federal). Therefore, the Abbertons entered into an agreement with Richard and Genelda Stephens. Pursuant to this agreement, on August 27, 1966, the Abbertons conveyed the property in St. Charles County by a general warranty deed to the Stephenses. Simultaneous to the conveyance of the property to the Stephenses, the Stephenses assumed the loan to Community Federal. The Stephenses paid off the loan to Community Federal in 1980. Mrs. Abberton testified that, at the time she signed over the deed to the Stephenses, she understood the difference between a general warranty deed and a mortgage and that she knew she was conveying the property "free and clear" to the Stephenses. Mrs. Abberton also stated that

the parties "discussed" the idea of the Abbertons getting back the property either after the loan was paid off or if the Abbertons could refinance the property.

On August 3, 1966, the Abbertons signed a promissory note in the amount of $500.00 in favor of the Stephenses. Mrs. Abberton testified that the Stephenses loaned the Abbertons $500.00 in order for the Abbertons to pay the back payments owed to Community Federal and bring the loan current so that the Stephenses could assume the loan and take title to the property by a general warranty deed. Mr. Stephens testified that he paid the arrears on the property directly to Community Federal when he assumed the loan; he did not recall that the $500.00 note was part of the property transaction. The note was paid off in 1970.

After the Abbertons conveyed the property to the Stephenses on August 27, 1966, the Abbertons continued to reside on the property until May 1985 when Mrs. Abberton moved from the property after being told to do so by Mr. Stephens. From August 1966 until May 1985 the Abbertons made monthly payments to the Stephenses. Mr. Stephens determined the amount of these payments. Initially, the payments were for the amount of the mortgage payments, real estate taxes, and insurance. Over the years the amount of these payments increased from approximately $60.00 per month to $175.00 per month. Mrs. Abberton testified that she knew the loan which the Stephenses assumed with Community Federal would be paid in full in 1980. Nonetheless, she continued to make monthly payments to the Stephenses until May 1985. On the majority of checks which the Abbertons sent to the Stephenses the Abbertons indicated on them that they were for rent. Mrs. Abberton testified that the Stephenses did not have the right to collect any money from the Abbertons if the Abbertons moved from the property. She further stated that there was no agreement by which the Stephenses had the right to collect from the Abbertons any amounts other than the rent payments, which payments were owed only so long as the Abbertons resided on the property.

The Stephenses paid the monthly payment to Community Federal, the insurance on the property and the real estate taxes. The Abbertons made no payments to Community Federal after the Stephenses assumed the note and deed of trust.

In November 1985, Mrs. Abberton petitioned for declaration of title to the property. The trial court entered a judgment in favor of Mr. Stephens on March 10, 1987.

On appeal, Mrs. Abberton argues that the deed of August 27, 1966, was not an absolute conveyance but, rather, an equitable mortgage. Initially, this court notes the applicable standard of review. The judgment of the trial court will be sustained unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law, or it erroneously applies the law. *Wojtkowski v. Shelter Insurance Companies*, 702 S.W.2d 74, 75 (Mo. banc 1985).

A deed which is absolute on its face, as is the deed in the instant case, may in fact be an equitable mortgage; a court may look beyond the absolute, unconditional terms of the conveyance so as to give effect to the intention of the parties if that intention is to create an equitable mortgage. *Raterman v. Striegel*, 273 S.W.2d 304, 306 (Mo.1954). However, a presumption exists that an absolute unconditional conveyance of land is a deed as it purports to be, that is, a deed, and not an equitable mortgage. *Parrish v. McDaniel*, 358 S.W.2d 32, 35 (Mo.1962). One must set forth clear, cogent and convincing proof in order to establish that a deed which is absolute on its face is actually an equitable mortgage. *Raterman*, 273 S.W.2d at 306.

A "necessary and indispensable" fact to hold that a deed which is absolute on its face is an equitable mortgage is that the deed was given merely as a security for a debt owed by the grantor of the deed to the grantee. *Parrish*, 358 S.W.2d at 35. "The existence of a debt is indispensable to the existence of a mortgage." *Id.* In determining whether a debt exists, we look to the parties' intention at the time the conveyance was executed. *Raterman*, 273 S.W.2d at 306. The grantor of a deed

which is absolute on its face must prove a binding obligation on his part continuing after the conveyance; the grantor must recognize the continued existence of a debt. *Webb v. Harrington,* 504 S.W.2d 252, 261 (Mo.App., W.D.1973). If the grantor is at liberty to pay or not pay at his "whim or caprice," there is no mortgage. *Wile v. Donovan,* 538 S.W.2d 906, 909 (Mo.App., S.D.1976), *quoting Bobb v. Wolff,* 148 Mo. 335, 49 S.W. 996, 998 (Mo.1899).

■ The court in *Webb v. Harrington,* 504 S.W.2d at 260, analyzed numerous cases decided by Missouri courts so as to compile a list of the factors which Missouri deems mitigate in favor of a finding that a deed which is absolute on its face is what it purports to be, an absolute, unconditional conveyance of land. The following facts are indicative of a deed absolute: (1) the property is conveyed subject to a prior lien; (2) the grantee of the deed pays the taxes levied against the property; (3) the grantee of the deed pays for the insurance on the property, and (4) the conveyance emanates from an amicable avoidance of foreclosure. *Id.* In the case before us, each of these factors is present.

■ The decision in *Webb v. Harrington* also points to facts which indicate the parties intended an equitable mortgage, one of which facts is the existence of a debt which remains enforceable by the grantee against the grantor after the deed is conveyed. *Id.* This factor is "indispensable" to a finding that an equitable mort-

gage exists. *Parrish,* 358 S.W.2d at 35. In the present case, Mrs. Abberton's testimony was unequivocal that the Abbertons did not recognize the existence of a debt to the Stephenses after the conveyance. The $500.00 promissory note, even assuming that it was related to the property transaction as an advance by the Stephenses to bring current the amount owed to Community Federal, did not create an equitable mortgage. In *Parrish,* the grantee of a deed advanced funds to the grantor, such funds to be applied toward the deed of trust which covered the property in question. *Parrish,* 358 S.W.2d at 35. In addition, the grantor assumed the deed of trust on the property. *Id.* However, the court ruled that the debt which arose when the grantee advanced funds to the grantor failed to survive the delivery of a warranty deed to the grantee. *Id.* In the present case, the Abbertons' debt to the Stephenses was extinguished upon the giving of the general warranty deed. *See Parrish,* 358 S.W.2d at 36.

The judgment of the trial court is affirmed.

REINHARD and CRIST, JJ., concur.